## Case No. 4,982a.
### FOSTER et al. v. SIMMONS.[1]
Circuit Court, D. Massachusetts. Oct. 7, 1878.

A. D. Chandler, for plaintiffs.

George P. Sanger, U. S. Atty.

Before CLIFFORD, Circuit Justice, and LOWELL, District Judge.

CLIFFORD, Circuit Justice. Masters of ships laden with goods for importation, on their arrival within four leagues of our coast, or within any of the bays, harbors, ports,

or inlets thereof, are required, upon demand, to produce the ship's manifest of such goods to such officer of the customs as shall come on board the ship for his inspection, and it is made the duty of such officer to certify the fact of compliance with that requirement, and the day the manifest was so produced. Imported goods may be entered for consumption or for warehousing, at the option of the importer or consignee, and the proceedings in the two cases, so far as respects the entry, are in all particulars the same. Such an entry must be in writing, and must be made to the collector of the district within fifteen days after the required report is filed by the master. Appropriate forms for that purpose are prescribed by law and the regulations of the treasury department, and the provision is that the owner or consignee making the entry shall also produce to the collector and naval officer, if any, the original invoice or invoices of the goods or other documents received in lieu thereof, or concerning the same, in the same state in which they were obtained, with the bills of lading for the importation. Waring v. Mayor, etc., 8 Wall. [75 U. S.] 117. Two importations from Liverpool were made by the plaintiffs, of River Plate skin wool, one by the Minnesota and the other by the Illyrian. Entry for warehousing was duly made in the former case, April 2, 1877, and the latter, April 9, in the same year. In the first importation there were 70 bags, containing 11,678 pounds of wool, invoiced and entered as of the value of $4,963; and in the second importation there were 219 bags, containing 38,455 pounds of wool, invoiced and entered as of the value of $16,321. Beyond question these proceedings were regular, and the agreed statement shows that the duties were estimated in each case at the time of the entry, that the required bond for the same was also given in each case, and that the collector designated on the invoice one in ten of the packages to be examined and appraised, and ordered the same to be sent to the public store for that purpose. Due report was by the appraiser made in the first case, April 3, 1877, as follows: "Washed River Plate Wool. Class 1. Value, over 32 cents per lb. Duty 20 cents and 22 per cent. Correct." In the second case the report bears date April 10, in the same year, and is in the words following: "Washed Wool. Class 1. Value over 32 cents per lb. Duty 20 cents and 22 per cent. Correct."

All these facts are agreed to, and it is also agreed that the duties in the first case were on the 20th of April, in the same year, ascertained, liquidated and assessed in accordance with the report of the appraiser, and that the duties in the second case were ascertained, liquidated and assessed by the appraiser, April 27th, of that year, in accordance with the report of the appraiser in that case. Protests were subsequently filed by the plaintiffs in each of the cases. In the first case, the protest though bearing date April 19th, 1877, was not delivered until the 27th of the same month. They, the importers, object to the liquidation of the duties in that case because the goods are charged with double the rates of duty upon unwashed wool instead of twice the amount of such duty as the act of congress provides. Formal protest was also filed in the second case, dated May 23, 1877, in which the plaintiffs object to the liquidation of the duties in that case, because, as they, in effect, insist, the washed wool should be treated as unwashed wool, and double the aggregate duty imposed upon the unwashed wool is the correct amount of duty to which the washed wool is properly subject, under the existing act of congress. Provision is made that the decision of the collector as to the rate and amount of duties shall be final and conclusive unless the owner or importer, consignee or agent shall, within ten days after the ascertainment and liquidation of the duties, as well in cases entered in bond as for consumption, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein distinctly and specifically the grounds of his objection thereto, and shall, within thirty days after the date of such ascertainment and liquidation, appeal therefrom to the secretary of the treasury, whose decision on such appeal shall be final and conclusive. 13 Stat. 215; Rev. St. § 2931; 19 Stat. 247.

Ten days from the date of the ascertainment and liquidation of the duties are allowed for the filing of the protest, or the giving notice in writing to the collector by the importer, consignee or agent, of his dissatisfaction with the collector's decision, setting forth therein distinctly and specifically, the grounds of such objection; and the agreed statement shows that the protest in the first case was seasonably filed, and in the judgment of the court it is sufficiently distinct and specific to constitute a compliance with that requirement in the act of congress. Davies v. Arthur, 96 U. S. 758.

Certain descriptions of importations were, under the act of the 2d of March, 1867 [14 Stat. 559], divided into classes, to facilitate the ascertainment of the duty, or rate of duty, to which the articles were subjected by the provisions of that act, which classification was, to a large extent, preserved in the Revised Statutes. Wool of the first class, the value whereof, excluding certain charges, shall be thirty-two cents or less per pound at the port whence exported, is subject to a duty of ten per cent. per pound, and in addition thereto, eleven per centum ad valorem; and wool of the same class, whose value, excluding charges, exceeds thirty-two cents per pound, is subject to a duty of twelve cents per pound, and in addition thereto, ten per cent. ad valorem, the antecedent provision being that the duty upon wool of the first class, which shall be import-

ed washed, shall be twice the amount to which it would be subjected if imported unwashed. Washed wool was imported in both of these cases, and the contest upon the merits is, whether the duties imposed by the collector were or were not correct. Both of these importations, if unwashed, were, at the time of their importation, excluding charges at Liverpool, valued at less than thirty-two cents per pound, and their value in a washed condition was somewhat more than twice the value per pound of the unwashed wool. Wools of the class mentioned, by being washed, shrink from fifty to sixty-five per cent. in weight, the dirt and grease being removed by the washing, which greatly diminishes the weight of the article, consequently the value of the pound of washed wool is somewhat more than double the value of the pound of unwashed wool of the same class. First class wool, if imported washed "shall be twice the amount of the duty to which it would be subjected if imported unwashed." Although the appraiser found that the value of the wools in these cases was over thirty-two cents per pound, yet it is plain that he committed an error in that regard, as the duty which he recommended in each case was twenty cents specific and twenty-two per cent. ad valorem, which is the duty imposed upon washed wool of the value of thirty-two cents per pound and less, as will be seen by doubling the rates charged upon unwashed wool of that valuation. Twenty cents specific duty and twenty-two per cent. ad valorem is just double the duty imposed on unwashed wool of the first class, when of the value of thirty-two cents and less, excluding charges at the last port or place whence exported. Grant the value of the wool imported was thirty-two cents or less, then it is clear that the collector in ascertaining and liquidating the amount, doubled the rates imposed by law upon unwashed wool of the same class, which is the theory assumed by both parties in this controversy. Viewed in that light the United States contend that the ascertainment and liquidation of the duties were correct and that the plaintiffs are not entitled to recover any thing, because they fail to show that they paid to the collector any excess beyond what the law imposed. On the other hand the plaintiffs contend that the ascertainment and liquidation of the duties were erroneous; that the collector should first have computed the amount of the duties which the law would impose on the number of pounds of unwashed wool and then have doubled that amount. Opposed to that it is contended by the United States that double the rates of duty in such a case, and twice the amount of the duty, are the same thing, which cannot be sustained, if it be meant by the proposition that the two methods of computation will produce the same aggregate result. Nor can the theory of the plaintiffs be sustained, as the agreed facts show

that the unwashed wool, by being washed, shrinks from fifty to sixty-five per cent., which is sufficient to show that the construction of the provision assumed by the plaintiff cannot be correct. Instead of that, the exact, literal meaning of the phrase would be approached much more nearly by adding the amount of the shrinkage of unwashed wool to the number of pounds of washed wool imported, and computing the duty at twice the amount of the duty to which it would be subjected if imported unwashed. If the amount of the shrinkage could be ascertained in every case, the theory suggested would work out the correct result; but it cannot be admitted that congress intended that it should be the duty of the collector in every case to ascertain how much the shrinkage of the unwashed wool was when it was converted into washed wool, before he could estimate and liquidate the duties upon the goods imported as washed wool. Congress never intended that such a construction should be adopted, as it would impose upon the collector the duty of making an inquiry which he could rarely, if ever, answer; and it is equally clear that congress never intended to adopt the theory of the plaintiffs, as that would leave fifty per cent. or more of the goods imported, duty free or without any customs taxation whatever. "Twice the amount of the duty to which it would be subjected, if imported unwashed," are the words of the act, and in the judgment of the court the rule of computation adopted by the collector is the only one of a practicable character which can be adopted consistent with the language of the provision. Customs taxation is usually by rates of duty specific or ad valorem, or by both, as in this case; and if the language had been twice the aggregate sum imposed upon a like amount of goods the case would have been clear, but the language is "twice the amount of the duty," which may well be construed to mean twice the duty upon the pound of washed wool to which the importation would be subjected if imported unwashed. Judgment must therefore be for the defendant in the first case.

Enough appears in the statement of the case to show that the protest in the second case was not filed in season to constitute a compliance with the act of congress, to which reference has already been made. 13 Stat. 215; Rev. St. § 293. Neither party controverts that proposition, if the ten days be computed from the original ascertainment and liquidation of the duties, but the plaintiffs insist there may be and is a subsequent ascertainment and liquidation of duties where the entry is for warehousing, and that if any subsequent protest is filed within ten days from such subsequent ascertainment and liquidation of the duties, the protest is seasonable. Nothing of the kind is provided for in the acts of congress. Nor can any such inference be drawn from the provision, which

is that the decision of the collector as to the rate and amount of duties, and the dutiable costs and charges thereon, shall be final and conclusive, unless the owner, importer, consignee or agent shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs give notice in writing to the collector, on each entry, if dissatisfied with his decision, setting forth therein distinctly and specifically the grounds of his objection thereto. Appeal, if any, must be taken within thirty days from that ascertainment and liquidation of the duties, and the same proceedings take place in respect to the entry and the ascertainment and liquidation of the duties, whether the entry is for warehousing or for consumption.

Usually the boarding officer, as before remarked, boards the vessel on her arrival, and obtains the manifest and delivers it to the collector; but if the boarding officer does not perform that duty, then the act of congress makes it the duty of the master to deliver the manifest to the collector within twenty-four hours after the arrival of the vessel, and to make formal entry of the vessel within forty-eight hours after the vessel arrives in port. On the arrival of the vessel the consignee, owner or agent is required to make an entry of the cargo, either for consumption or for warehousing, and to produce the bill or bills of lading, together with the invoice duly certified, setting forth the quantity, quality and general description of the merchandise. Where the entry is for consumption, an estimate of the amount of the duties appearing to be due, is made from the quantity and description given in the invoice; and, if the person making the entry deposits the estimated amount of the duties so appearing to be due, a permit is then issued to deliver the cargo after the quantities are ascertained, the invoice being at the same time sent to the appraiser with the request endorsed on its face to "examine and classify the merchandise, and to report thereon;" and at the same time the surveyor is requested to ascertain and report quantities. Step by step the same proceedings are had in the case of merchandise entered for warehousing, except that in lieu of a deposit covering the estimated amount of the duties, a bond is taken in the penal sum of double the amount of the duties appearing to be due by the invoice. Formal entry is required in both cases, and in both cases the duties are ascertained and liquidated on the receipt by the collector, of the appraiser's report in relation to classification and rate, and the surveyor's report in relation to quantity. No other appraisement takes place unless the party making the entry, or the collector, is dissatisfied with the appraisement, in which event the collector may order another appraisement by the local appraisers, or by the principal appraiser, or by three merchants. Alterations are sometimes made by the second appraisers, but when the duties are ascertained and liquidated, the importer, if dissatisfied with the decision of the collector, has ten days from the date of such ascertainment and liquidation in which to enter his protest, and may appeal to the secretary of the treasury within thirty days from the same date. Withdrawals of parcels of merchandise where the entry is for warehousing, may be made at any time pursuant to the treasury regulations, but there is no act of congress providing for any other ascertainment and liquidation of the duties, nor for any other protest or appeal. When the entry is made the duties are estimated by the collector for the purpose of fixing the amount of the required deposit or bond, but the ascertainment and liquidation of the duties follows the action of the appraiser and that of the surveyor, unless the importer augments the value or quantity, or both, in the entry. The estimation of duties for the purpose of fixing the amount of the deposit in case the entry is for consumption, or of the bond in case the entry is for warehousing, is always made from the value and quantities specified in the invoice, but it is a mere estimate, and should never be confounded with the subsequent ascertainment and liquidation of the duties. Attempt is made in argument to support the opposite theory from Mr. Justice Strong, in an opinion given by him in the supreme court. Westray v. U. S., 18 Wall. [85 U. S.] 322.

Four points were decided in that case: 1. That the collector is under no obligation to give notice to the importer of the liquidation of duties on imported merchandise. 2. That the right of the importer to complain or appeal begins with the date of the liquidation, whenever that is made. 3. That the warehouse bond is a bond given to secure the payment of whatever duties may be by law chargeable upon the merchandise to which it refers. 4. That the obligor can only be relieved from the penalty by the payment of all the duties, to secure which he gave the bond.

Beyond that there is nothing in the opinion which controls the present case. In the course of the opinion the judge points out very clearly the difference between the estimate of duties made to fix the amount of the deposit or the amount of the bond, and the subsequent ascertainment and liquidation of the duties which mark the date from which the ten days allowed for protest begin to run. It is clear from that opinion that the limitation of the right to complain or appeal, commences with the date of the liquidation, and that the collector is not required to give notice when the liquidation takes place. Nor is there any thing in that opinion in the judgment of the court here which gives any sanction to the theory that the collector must make a new liquidation of duties every time the importer withdraws from the warehouse any portion

of the imported goods. Such a theory, if accepted, would prove to be very inconvenient, and would increase the duties of the collector's office beyond what the present force in those offices could perform, but the better answer to the proposition is that there is no act of congress which authorizes any such proceeding. Apply the rules here suggested and it is clear that the defendant is also entitled to judgment in the second case.

Judgment for the defendant.